Nos. 22-55988, 22-56036

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

AL OTRO LADO, INC., *et al.*,

*Pls.-Appellees/Cross-Appellants*,

v.

ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*,

*Defendants-Appellants/Cross-Appellees*,

and

THE EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

*Appellant/Cross-Appellee.*

_____

APPEAL FROM FINAL JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA
No. 17-cv-02366-BAS-KSC

_____

## APPELLEES/CROSS-APPELLANTS' FURTHER
## EXCERPTS OF RECORD VOLUME 2 – UNDER SEAL

Melissa Crow
CENTER FOR GENDER & REFUGEE STUDIES
1121 14th Street, N.W., Suite 200
Washington, DC 20005
(202) 355-4471

Neela Chakravartula
Anne Dutton
CENTER FOR GENDER & REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Ori Lev
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3270

Stephen M. Medlock
Evan Miller
Rami Rashmawi
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.,
Suite 500 West
Washington, DC 20036
(202) 639-6500

*Additional Counsel listed inside cover*

Sarah Rich
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
(404) 521-6700

Rebecca Cassler
SOUTHERN POVERTY LAW CENTER
201 Saint Charles Avenue, Suite 2000
New Orleans, LA 70170
(504) 486-8982

Katherine Melloy Goettel
Gianna Borroto
Suchita Mathur
AMERICAN IMMIGRATION COUNCIL
1331 G St NW, Suite 200
Washington, DC 20005
(202) 507-7552

*Counsel for Appellees/Cross Appellants*

1   MAYER BROWN LLP
     Matthew H. Marmolejo (CA Bar No. 242964)
2    *mmarmolejo@mayerbrown.com*
   350 S. Grand Avenue
3   25th Floor
   Los Angeles, CA 90071-1503
4     Ori Lev (DC Bar No. 452565)
     (*pro hac vice*)
5    *olev@mayerbrown.com*
     Stephen M. Medlock (VA Bar No. 78819)
6     (*pro hac vice*)
    *smedlock@mayerbrown.com*
7   1999 K Street, N.W.
   Washington, D.C. 20006
8   Telephone:  +1.202.263.3000
   Facsimile:   +1.202.263.3300
9
   SOUTHERN POVERTY LAW CENTER
10    Melissa Crow (DC Bar No. 453487)
     (*pro hac vice*)
11   *melissa.crow@splcenter.org*
   1101 17th Street, N.W., Suite 705
12   Washington, D.C. 20036
   Telephone: +1.202.355.4471
13   Facsimile: +1.404.221.5857

14   *Additional counsel listed on next page*
   *Attorneys for Plaintiffs*
15

        **UNITED STATES DISTRICT COURT**
16
        **SOUTHERN DISTRICT OF CALIFORNIA**
17

18   Al Otro Lado, Inc., *et al.*,       Case No.:  17-cv-02366-BAS-KSC

19          Plaintiffs,

20      v.          **EXHIBIT 7 TO PLAINTIFFS'**
                 **MOTION FOR CLASS**
21   Chad F. Wolf,[1] *et al.*,     **CERTIFICATION**

22        Defendants.   **Expert Report of Stephanie Leutert**

23                ***FILED UNDER SEAL***

24

25

26

27

28   [1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Chad Wolf, *et al.*,<br><br>Defendants. | Case No.: 17-cv-02366-BAS-KSC |

**EXPERT REPORT OF STEPHANIE LEUTERT**

1

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

denial can become permanent. As mentioned earlier, in order to be gain access to the U.S. asylum process, asylum seekers in many Mexican cities must join asylum waitlists that are run by unregulated list managers. At least two of these lists have been "closed" since March 2019 and have not allowed arriving asylum seekers to join.[132] Other lists have required the payment of hundreds or thousands of dollars for asylum seekers to access them. This means that accessing the U.S. asylum process in these locations has become dependent on the structure of an unregulated list system in Mexico or the ability to pay large sums of money to a third party.

83. Second, due to metering, asylum seekers are now waiting weeks or months in precarious or dangerous conditions before even having a chance to ask for asylum. The cities of Matamoros, Nuevo Progreso, Reynosa, Ciudad Miguel Alemán, and Nuevo Laredo are all located in the Mexican state of Tamaulipas, which the U.S. State Department has given a Level 4 advisory of "Do Not Travel." The U.S. travel advisory warns that in Tamaulipas "Violent crime, such as murder, armed robbery, carjacking, kidnapping, extortion, and sexual assault, is common."[133] Three

---

[132] These include the individual and family lists in Ciudad Acuña. There have been reports that the Piedras Negras list was periodically closed in 2019.

[133] It also notes that "Gang activity, including gun battles and blockades, is widespread. Armed criminal groups target public and private passenger buses as well as private automobiles traveling through Tamaulipas, often taking passengers hostage and demanding ransom payments. Federal and state security forces have limited capability to respond to violence in many parts of the state." "Mexico Travel

other Mexican border states—Coahuila, Chihuahua, and Sonora—have a Level 3 State Department travel advisory of "Reconsider Travel."[134] Baja California has a Level 2 travel advisory of "Exercise Increased Caution."[135]

84.    While asylum seekers wait in Mexican border cities, some have been targeted for crimes, such as robberies, assault, and frequently kidnappings. In 2019, Human Rights First documented a case in Nuevo Laredo where a Guatemalan man on the asylum waitlist was kidnapped after leaving a migrant shelter to search for temporary employment.[136] In January 2019, I also documented a case where a Salvadoran family was kidnapped in Piedras Negras in July 2018 while waiting for their number to be called on the waitlist. When this family was released by Coahuila State Police, they were sent to the National Migration Institute, which began

---

Advisory," U.S. State Department, accessed November 11, 2019, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/mexico-travel-advisory.html.

[134] The ports of entry in Coahuila are Eagle Pass and Del Rio. The ports of entry in Chihuahua are El Paso, Santa Teresa, Tornillo, and Columbus. The ports of entry in Sonora are Douglas, Lukeville, Naco, Nogales, and San Luis.

[135] The ports of entry in Baja Californa are Andrade, Calexico East, Calexico West, Tecate, Otay Mesa, and San Ysidro.

[136] "Barred at the Border," Human Rights First, April 2019, https://www.humanrightsfirst.org/sites/default/files/BARRED_AT_THE_BORDER.pdf.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

deportation proceedings to send them back to El Salvador.[137]

85.     Given that Mexican law enforcement are legally mandated to channel anyone in the country without migratory paperwork to the National Migration Institute (regardless of whether or not they are waiting on an asylum waitlist), there are surely other cases where kidnapped asylum seekers were channeled into deportation proceedings.[138] Additionally, asylum seekers waiting on metering lists are not provided any legal documents to remain in Mexico, and, according to Article 98 of Mexico's 2011 Migratory Law, any foreigner detected that does not have the documents accrediting their regular migratory status in the country will be subject to apprehension.[139]

86.     Third, there are also cases of turn-backs and metering that have led to

---

[137] Stephanie Leutert and Shaw Drake, "'We are Full': What Asylum Seekers Are Told," *The New York Times*, January 28, 2019, https://www.nytimes.com/2019/01/28/opinion/asylum-border-immigrants-trump-.html.

[138] Only the National Migration Institute is authorized to check an individual's migratory paperwork. The 2011 Migratory Law outlines that the Federal Police (and now the National Guard) can assist the National Migration Institute in its migration enforcement efforts when their assistance is requested. However, unauthorized migrants that are discovered during routine law enforcement work are generally channeled to the National Migration Institute.

[139] Ley de Migración, Congreso General de los Estados Unidos Mexicanos, May 2011, http://www.diputados.gob.mx/LeyesBiblio/ref/lmigra/LMigra_orig_25may11.pdf.

2-FER-263

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

an effective end to asylum seekers' claims, and even their lives. In June 25, 2019, Oscar and Valerie Martinez made headlines when they drowned in the Rio Grande river in Matamoros. The family had been living in a camp of asylum seekers near the international bridge, waiting for their asylum numbers to be called.[140] After a month of waiting, they grew discouraged and decided to cross the river to ask for asylum from Border Patrol agents, which is when they drowned in the swift current. Similarly, a Honduran woman and her two year old son also drowned in the Rio Grande near Ciudad Acuña after waiting in a tent camp in that city and then attempting to cross.[141] There are additional cases of individuals and children dying after being metered.[142] These asylum seekers were unable to access the U.S. asylum process in the moment when they arrived to the U.S.-Mexico border, and died before ever being able to access it.

---

[140] Julia Le Duc, "Migrante salvadoreño y su hija mueren en el intent de cruzar a EU," La Jornada, June 25, 2019, https://www.jornada.com.mx/sin-fronteras/2019/06/24/migrante-salvadoreno-y-su-hija-mueren-en-el-intento-de-cruzar-a-eu-9107.html.

[141] Andy Torres, "Honduran migrant and her two year old son drown while attempting to swim across the Rio Grande from Mexico to reunite with her husband and two daughters in the US," *Daily Mail*, September 17, 2019, https://www.dailymail.co.uk/news/article-7473969/Honduran-migrant-two-year-old-son-drown-attempting-swim-Mexico.html.

[142] Riane Roldan, "Border Patrol searches for missing 2-year-old girl in Rio Grande," Texas Tribune, July 3, 2019, https://www.texastribune.org/2019/07/03/border-patrol-searches-missing-2-year-old-girl-rio-grande/.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

87.    Finally, CBP has increasingly denied access to the U.S. asylum process for Mexican nationals. CBP's April 2018 Metering Guidance explicitly names Mexican nationals as a group that should not be stopped from entering U.S. territory, writing "DFOs should be particularly aware of any INAMI controls that are preventing U.S. citizens, LPRs, or Mexican nationals (some of whom may intend to claim fear) from entering the United States."[143] However, the November 2019 Metering Report Update counted 11,040 Mexicans who had been turned back from U.S. ports of entry and were waiting at the U.S.-Mexico border, making up 52 percent of people then on asylum waitlists.[144] These asylum seekers were forced to wait in the very country that they are attempting to flee. In Ciudad Juárez and Matamoros, these asylum seekers have created their own separate waitlists, so as not to be in contact with Mexican government officials.[145]

## VI.    Conclusion

88.    Beginning in May 2016, the U.S. government began turning back asylum seekers who were arriving at ports of entry on the U.S.-Mexico border. This

---

[143] AOL-DEF-00196460.

[144] "Metering Update," Strauss Center for International Security and Law and the Center for U.S.-Mexican Studies, November 2019, https://www.strausscenter.org/images/strauss/18-19/MSI/MeteringUpdate_191107.pdf.

[145] In Matamoros, the National Migration Institute runs the asylum waitlist at the Gateway Bridge. In El Paso, the State Population Council runs the asylum waitlist.

2-FER-265

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

practice began at the San Ysidro port of entry and spread relatively rapidly to the rest of the U.S.-Mexico border. By April 2018, CBP formally established this policy in a formal Metering Guidance memo that was then disseminated to CBP officers via a series of written and oral musters and standard operating procedures. Today, turn-backs on the U.S.-Mexico border are ubiquitous and systemic. Smaller ports of entry redirect asylum seekers to larger ports of entry, even though the smaller ports of entry have the ability to process asylum seekers. Larger ports of entry turn back asylum seekers, directing them to shelters and waitlists maintained on the Mexican side of the border.

89.     Due to these turn-backs, asylum seekers wait for weeks, if not months, to access the U.S. asylum process, often times in dangerous conditions. CBP's MCAT and Queue Management Reports offer a common method for determining whether capacity constraints prevented a port of entry from inspecting and processing an asylum seeker without resorting to turn-backs. Using this method, I have determined that the standardized use of turn-backs cannot be justified by capacity constraints at the majority of ports of entry.

90.     The data includes many instances when ports of entry reach capacity but since April 2018, these ports of entry have never used their previously-approved contingency plans that would have temporarily expanded capacity within the port of entry during times of increased migration. Additionally, metering practices and turn-

61

backs have remained in place regardless of the migration level at the port of entry.

91.     If metering and turn-backs were only a response to greater numbers of arriving asylum seekers, then we could expect that the limit line positions, turn-backs, and metering processes would disappear in ports of entry that were experiencing low migration numbers or had no individuals waiting in Mexico to seek entry. Yet, CBP's documents, extensive fieldwork, the September 2019 OIG report regarding Tecate, and Gibbons testimony all illustrate that these policies continue to be in place at pedestrian ports of entry along the entire U.S. border, unchanged by the ebbs and flows of migration numbers.

Signed this 10th day of December, 2019:

_____ _____
Stephanie Leutert