Nos. 22-55988, 56036

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

AL OTRO LADO, INC., *et al.*,
*Plaintiffs-Appellees/Cross-Appellants*,

v.

ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*
*Defendants-Appellants/Cross-Appellees*,

and

the EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,
*Appellant/Cross-Appellee.*

On Appeal From a Final Judgment Issued By the U.S. District Court for the
Southern District of California (Civil Action No. 3:17-cv-02366-BAS-KSC)

## SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

ALEXANDER J. HALASKA
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation -
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
Email: alexander.j.halaska@usdoj.gov

*Counsel for the Government*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................3

    I.   Plaintiffs' Injuries Cannot Be Redressed By The Relief Ordered, and The Relief is Overbroad Based on *TransUnion*. ....................................3

    II.  *Mendoza-Linares* Confirms The Government Is Entitled To Judgment On Plaintiffs' Due Process Claim. ................................................7

    III. *Mendoza-Linares* Confirms The District Court Lacked Jurisdiction to Enjoin The Application Of The Third Country Transit Rule. ..........................................................................9

CONCLUSION ..................................................................................15

CERTIFICATE OF SERVICE .............................................................17

CERTIFICATE OF COMPLIANCE ......................................................18

i

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*AID v. Alliance for Open Society International, Inc.*,
  140 S. Ct. 2082 (2020)......................................................................8

*AILA v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000).....................................................11

*Al Otro Lado v. Wolf*,
  No. 17-cv-2366, 2020 WL 6381893 (S.D. Cal. Oct. 30, 2020) ....................13

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398, 409 (2013) ...............................................................3

*DHS v. Thuraissigiam*,
  140 S. Ct. 1959 (2019)................................................................8, 9

*Garland v. Aleman Gonzalez*,
  142 S. Ct. 2057 (2022)...................................................................6

*Guerrier v. Garland*,
  18 F.4th 304 (9th Cir. 2021) .........................................................12

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) .....................................................6, 7

*Mendoza-Linares v. Garland*,
  51 F.4th 1146 (9th Cir. 2022) ............................................. *passim*

*Pena v. Lynch*,
  815 F.3d 452 (9th Cir. 2016) .................................................. 11, 12

*Republic of Marshall Islands v. United States*,
  865 F.3d 1187 (9th Cir. 2017) .......................................................7

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)...................................................... 1, 3, 5

*United States v. Texas*,
  599 U.S. 670 (2023)......................................................................7

*United States v. Verdugo-Urquidez,*
    494 U.S. 259 (1990)......................................................................8

**Federal Statutes**

8 U.S.C. § 1225(b)(1)(B) ...........................................................11

8 U.S.C. § 1252(a)(2)(A) ....................................................... *passim*

8 U.S.C. § 1252(e)(1)....................................................... 11, 14

8 U.S.C. § 1252(e)(2)...................................................................11

8 U.S.C. § 1252(e)(3)...................................................................11

**Administrative Materials**

Circumvention of Lawful Pathways,
    88 Fed. Reg. 31,314 (May 16, 2023)............................................5

//

## **INTRODUCTION**

This Court directed the parties to submit supplemental briefs addressing "whether Plaintiffs have Article III standing"; "the impact, if any, of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), on that question"; and "the impact of *Mendoza-Linares v. Garland*, 51 F.4th 1146 (9th Cir. 2022), if any, on the issues in this case." Dkt. 85. The Government submits this Supplemental Brief in response.

The Government's appeal presents the question of whether the statutes governing asylum and the inspection of noncitizens for admission to the United States apply to noncitizens in Mexico. Plaintiffs claim that those statutes apply extraterritorially in this fashion, and so it is unlawful for U.S. Customs and Border Protection (CBP) to regulate the pace or manner at which noncitizens without sufficient entry documents may enter the United States at ports of entry along the U.S.-Mexico border. For the reasons explained in the Government's Opening Brief (Dkt. 12) (First Br.) and its Reply and Response Brief (Dkt. 62) (Third Br.), Plaintiffs' argument is incorrect. Because these statutes apply only to noncitizens within the United States' borders, they do not prohibit CBP from using metering to manage the pace at which undocumented noncitizens may enter the United States from Mexico at ports of entry. Thus, the district court erred in holding that metering unlawfully withholds required agency action and entering declaratory and injunctive relief on that basis.

1

Besides these points, Plaintiffs lack standing. Any claimed injury is not re-dressable due to the unavailability of classwide relief under 8 U.S.C. § 1252(f)(1). At a minimum, however, the relief the district court entered was overbroad under *TransUnion* because it granted relief to Class Members who did not have standing to obtain it.

Separately, *Mendoza-Linares* confirms that metering does not violate Class Members' claimed procedural due process rights. Any rights that Class Members "may have in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause." *Mendoza-Linares*, 51 F.4th at 1167. This means that even if the Department of Homeland Security (DHS) and CBP violated statutory obligations by metering—which they did not—that does not amount to a constitutional violation.

*Mendoza-Linares* also confirms that the district court lacked jurisdiction un-der 8 U.S.C. §§ 1252(a)(2)(A) and 1252(e) to order DHS to identify, reopen, and unwind negative credible fear determinations in cases where the Third Country Transit Rule was applied to noncitizens who would have entered the United States before the Rule's effective date had they not been metered. Any contention "that the Transit Bar should not have been applied during . . . expedited removal proceed-ings . . . necessarily challenge[s] 'the application of [Section 1225(b)(1)] to [a noncitizen], including the determination made under [Section 1225(b)(1)(B)]'" that

the noncitizen lacks a credible fear of persecution. *Mendoza-Linares*, 51 F.4th at 1155 (quoting 8 U.S.C. § 1252(a)(2)(A)(iii)). "Under the plain language of [Section 1252](a)(2)(A)(iii), judicial review of such matters is barred." *Id.*

## ARGUMENT

### I. Plaintiffs' Injuries Cannot Be Redressed By The Relief Ordered, and The Relief is Overbroad Based on *TransUnion*.

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). As outlined in *TransUnion*, the deprivation of a claimed statutory privilege is not, by itself, a concrete injury sufficient to confer Article III standing. *See TransUnion*, 141 S. Ct. at 2205. Courts must evaluate each plaintiff's standing to obtain the particular relief requested, *id.* at 2207–08, and "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek," *id.* at 2208.

The district court granted relief based on its conclusion that "turnbacks" of undocumented noncitizens withhold CBP's mandatory statutory duties of inspection and processing, and thus also, in the court's view, deprive Class Members of due process. 1-ER-116–17, 120–21. The district court did not issue any relief to the Organizational Plaintiff Al Otro Lado, Inc. (AOL), nor address whether AOL had standing to obtain any relief at the summary-judgment stage. Instead, it ordered

3

classwide injunctive and declaratory relief. The court issued an injunction that operates both prospectively, to preclude future applications of the Third Country Transit Rule, and retrospectively, to require reopening or reconsideration of past applications of that Rule, as to a subclass of non-Mexican noncitizens who were unable to enter the United States before the Rule's effective date due to metering. 1-ER-4–5. The court also issued a declaratory judgment that "absent any independent, express, and lawful statutory authority, Defendants' denial of inspection or asylum processing to Class Members . . . who are in the process of arriving in the United States at Class A Ports of Entry, is unlawful regardless of the purported justification for doing so," as to a broad class of noncitizens "who were or will be denied access to the U.S. asylum process by or at the instruction of CBP officials on or after January 1, 2016." 1-ER-3.

*Injunction.* The Injunction Class lacks standing because any claimed injury arising from the actual or potential application of the Transit Rule is not redressable due to the unavailability of injunctive relief. As the Government has already argued, 8 U.S.C. § 1252(f)(1) bars the district court's classwide injunction because that injunction interferes with the Government's conduct of removal proceedings or expedited removal. First Br. 52–56; Third Br. 32–35. Sections 1252(a)(2)(A) and (e) also bar the injunction as applied in expedited removal. *See* First Br. 52; *infra* § III.

But even if these statutes did not foreclose the district court's injunction, the

prospective aspect of the injunction is moot because the Transit Rule has been re-scinded, *see* Circumvention of Lawful Pathways, 88 Fed. Reg. 31,314, 31,319, 31,321–23 (May 16, 2023), and the retrospective aspect of the injunction is improper under *TransUnion*. Under that case, each Class Member must have suffered concrete harm to warrant classwide relief, and a "material risk of harm" does not suffice to obtain retrospective relief. *See TransUnion*, 141 S. Ct. at 2207–08, 2210–11. Not every member of the Injunction Class had asylum denied based on the Transit Rule (let alone based solely on the Transit Rule), and thus not every member suffered the injury required to seek and obtain reopening or reconsideration of their immigration cases. Indeed, no Named Plaintiff even asserted such an injury. The Injunction Class is thus overbroad.

***Declaratory Judgment.*** The Declaratory Judgment Class is overbroad under *TransUnion* to the extent it encompasses Class Members who have since entered the United Sates. The district court did not determine whether Class Members who "were . . . denied access" in the past but have since entered the United States have suffered any concrete harm that could be redressed by the declaratory relief. 1-ER-3. "Although a person exposed to a risk of future harm may pursue forward-look-ing . . . relief to prevent the harm from occurring," *TransUnion*, 141 S. Ct. at 2210–11, Class Members who have already entered the United States cannot benefit from the prospective declaratory relief. Plaintiffs did not ask for the declaratory relief to

remedy any past harms, and the district court did not analyze whether Class Members who have entered the United States had suffered a harm that could retrospectively be remedied by its declaratory judgment.

Moreover, no Plaintiffs had standing to obtain prospective declaratory relief to prevent future turnbacks because declaratory relief is not "substantially likely to redress" any of the Plaintiffs' claimed harms. *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). Even if the Government seeks to conform its conduct with the declaratory judgment, the declaration that turnbacks are unlawful does not itself prevent the Government from taking (or require the Government to take) any action with respect to inspection and processing under 8 U.S.C. § 1225 on a class-wide basis. If it did, the judgment would then interfere with the Government's efforts to operate that provision and would run afoul of Section 1252(f)(1). *See* First Br. 57 (preserving argument that Section 1252(f)(1) prohibits declaratory judgments that operate like injunctions). As the district court correctly determined, the prospective injunctive relief Plaintiffs sought below was not available under Section 1252(f)(1), *see* 1-ER-12–14, 26–27——a final decision that Plaintiffs did not appeal. The district court explained that, under *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022), it could not "enjoin[] . . . turnbacks or direct[] Defendants to administer their inspection and referral duties with respect to plaintiff class members," 1-ER-14, because such an injunction would "have the effect of 'interfer[ing] with the Government's

6

efforts to operate" the covered provision Section 1225, 1-ER-22. Because the class-wide injunction that could potentially address prospective harms is "a forbidden one in this case," the harms are not redressable by court order. *United States v. Texas*, 599 U.S. 670, 690–92 (2023) (Gorsuch, J. concurring). The declaratory judgment likewise cannot redress the Class's claimed injuries, because the claimed statutory duties are not enforceable classwide due to Section 1252(f)(1). *See Juliana*, 947 F.3d at 1170 (to establish redressability, "plaintiffs must show that the relief they seek is . . . within the district court's power to award"); *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 & n.10 (9th Cir. 2017) (holding that redressability is not met where courts have "no power to prevent" the claimed injury because the underlying obligations are not enforceable).

The injunction and declaratory judgment are improper on the various jurisdictional and merits grounds discussed herein and in the Government's merits briefs. The Court should remand with instructions to vacate the injunctive and declaratory relief in its entirety, as remand for the sole purpose of narrowing the Injunction and Declaratory Judgment Classes would be inefficient.

## II. *Mendoza-Linares* Confirms The Government Is Entitled To Judgment On Plaintiffs' Due Process Claim.

The district court erred in holding that metering violates Class Members' procedural due process rights. *See* First Br. 46–49; Third Br. 26–29. Class Members in Mexico, as "foreign citizens outside U.S. territory[,] do not possess rights under the

U.S. Constitution." *AID v. Alliance for Open Society International, Inc.*, 140 S. Ct. 2082, 2086 (2020) (collecting cases); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) (the Supreme Court's "rejection of extraterritorial application of the Fifth Amendment [is] emphatic"). And, even if the Fifth Amendment applied to Class Members in Mexico, "the only procedural rights of an alien seeking to enter the country are those conferred by statute," *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1977 (2019), and the deprivation of a claimed statutory right does not automatically amount to a constitutional violation.

This Court's decision in *Mendoza-Linares* confirms these points. In that case, a noncitizen sought judicial review of his expedited removal order, contending it was unlawful for the Government to deny him asylum under the Third Country Transit Rule because "he has a 'liberty interest,' protected by procedural due process, in the 'statutory rights' reflected in the INA's expedited-removal provisions" at 8 U.S.C. § 1225. *Mendoza-Linares*, 51 F.4th at 1166. This Court rejected Mendoza-Linares's argument as "directly contrary" to the Supreme Court's decision in *Thuraissigiam*. *Id.* at 1166–67 (citing *Thuraissigiam*, 140 S. Ct. at 1981). "[A]ny rights Mendoza-Linares may have in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause." *Id.* at 1167.

So too here. The Named Plaintiffs and Class Members were or are unadmitted,

nonresident noncitizens who sought or plan to seek admission to the United States. Each Class Member "'requests a privilege and *has no constitutional rights regarding his application*,' meaning that such an alien 'has only those rights regarding admission that Congress has provided by statute.'" *Id.* at 1167 (quoting *Thuraissigiam*, 140 S. Ct. at 1982–83). Sections 1158 and 1225 do not apply to Class Members while they stand in Mexico, *see* First Br. 27–39; Third Br. 6–24, but even if they did, any such rights "are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause," *Mendoza-Linares*, 51 F.4th at 1167. This means that even if Class Members have a statutory right to be inspected for admissibility before they enter the United States, and even if CBP deprives them of that right by turning them back, that is not a due process violation.

## III. *Mendoza-Linares* Confirms The District Court Lacked Jurisdiction to Enjoin The Application Of The Third Country Transit Rule.

*Mendoza-Linares* also confirms that the district court erred in issuing injunctive relief relating to the Third Country Transit Rule. Under Sections 1252(a)(2)(A) and 1252(e), the district court had no authority to review or enjoin the application of the Transit Rule to noncitizens in expedited removal who would have entered the United States before the Rule took effect had they not been metered. First Br. 52.[1]

_____

[1] The Government also contends the injunction was unlawful for other reasons, including as to noncitizens who had the Transit Rule applied to them in removal proceedings under 8 U.S.C. § 1229a. First Br. 49–57; Third Br. 29–35. However, those

Congress has eliminated judicial review of the expedited removal process with only the narrowest exceptions. The INA, at 8 U.S.C. § 1252(a)(2)(A), states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241], or any other habeas corpus provision, and [28 U.S.C. §§ 1361 and 1651], no court shall have jurisdiction to review—

> (i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,

> (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

> (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or

> (iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A). Together, these provisions comprehensively establish when courts wholly lack jurisdiction to hear causes or claims relating to the Government's implementation of Section 1225(b)(1), and when there are limited exceptions permitting circumscribed review. Clause (iii) prohibits judicial review of "the application of" Section 1225(b)(1) to individual noncitizens, "including the determination made under section 1225(b)(1)(B)" as to whether those noncitizens have a credible

---

arguments are not the subject of this Supplemental Brief, as *Mendoza-Linares*'s discussion of Section 1252 applies only to individuals in expedited removal.

fear of persecution or torture. *Id.* § 1252(a)(2)(A)(iii); *see id.* § 1225(b)(1)(B) (procedures for conducting credible fear determinations). There is no exception to this prohibition—meaning no court may revisit credible fear determinations.

Clauses (i), (ii), and (iv) prohibit judicial review "except as provided in" Section 1252(e). Section 1252(e) begins: "Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with [8 U.S.C. § 1225(b)(1)] except as specifically authorized in a subsequent paragraph of this subsection . . . ." 8 U.S.C. § 1252(e)(1). The first "subsequent paragraph" of Section 1252(e) allows for sharply circumscribed review of a habeas petition filed by a noncitizen with an expedited removal order. *Id.* § 1252(e)(2); *Pena v. Lynch*, 815 F.3d 452, 455 (9th Cir. 2016). The other "subsequent paragraph" of Section 1252(e) allows for "systemic" review of "determinations made under section 1225(b) of this title and its implementation," but only in actions filed in the U.S. District Court for the District of Columbia within 60 days of the agency action at issue. 8 U.S.C. § 1252(e)(3); *see AILA v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000).

This Court examined these provisions in *Mendoza-Linares*. In that case, a noncitizen filed a petition for review from an expedited removal order, contending that DHS's determination that he lacked a credible fear of persecution under the

Transit Rule "denied [him], without due process, his statutory rights under" 8 U.S.C.
§ 1225. *See* 51 F.4th at 1153. This Court recognized that Sections 1252(a)(2)(A) and
1252(e) stripped it of jurisdiction to consider that challenge. The "plain text of sub-
paragraph (A) comprehensively bars judicial review of matters relating to expedited
removal orders under § [1225(b)(1)], 'except as provided in subsection (e),' which
provides only for very limited challenges in an appropriate district court" that were
not relevant to Mendoza-Linares's claim. *Id.* at 1154.

This Court also rejected Mendoza-Linares's attempt to secure judicial review
by raising a "colorable constitutional claim." Although prior case law suggested that
judicial review of expedited removal orders may be available despite Section
1252(a)(2)(A) if the noncitizen presented "a colorable claim of constitutional depri-
vation," *Pena*, 815 F.3d at 456, that rule was abrogated by the Supreme Court's
decision in *Thuraissigiam*, which recognized "that the Due Process Clause does not
require review of how the agency determines whether a noncitizen subject to expe-
dited removal is eligible for asylum." *Guerrier v. Garland*, 18 F.4th 304, 312 (9th
Cir. 2021). In *Mendoza-Linares*, this Court recognized that Congress indeed in-
tended to foreclose judicial review of colorable constitutional claims connected to
an order of expedited removal, explaining that "[w]ith respect to § [1252(a)(2)(A)]
and § [1252](e), Congress has thereby made clear its intent to preclude judicial re-
view of constitutional claims, as well as questions of law." *Mendoza-Linares*, 51

F.4th at 1162 (cleaned up).

Just as in *Mendoza-Linares*, Sections 1252(a)(2)(A) and 1252(e) preclude the district court's injunction here to the extent it applies to the application of the Transit Rule in expedited removal. The district court issued exactly the relief that Section 1252(a)(2)(A)(iii) prohibits, but on a classwide rather than an individual basis. Its injunction provides, in relevant part: "[DHS] and EOIR must take immediate affirmative steps to reopen or reconsider past determinations that potential Preliminary Injunction Class Members were ineligible for asylum based on the Interim Final Transit Rule, for all potential Preliminary Injunction Class Members in expedited or regular removal proceedings." 1-ER-4. This required, and continues to require, DHS to reopen or reconsider negative credible fear determinations in "expedited . . . removal proceedings"—and the expedited removal orders based on those determinations—as to Injunction Class Members.

The district court thus engaged in blanket review of "the application of" Section 1225(b)(1) "to individual aliens, including the determination made under section 1225(b)(1)(B)" that such individuals lacked a credible fear of persecution under the Transit Rule's standards. 8 U.S.C. § 1252(a)(2)(A)(iii).[2] As this Court explained, such review is prohibited. A noncitizen's "claims that the Transit Bar should not

---

[2] The court also engaged in individual review of such determinations. *See Al Otro Lado v. Wolf*, No. 17-cv-2366, 2020 WL 6381893 (S.D. Cal. Oct. 30, 2020).

have been applied during his expedited removal proceedings under § [1225](b)(1), and that the resulting expedited removal order is legally and factually deficient, necessarily challenge the application of such section to [him], including the determination made under section 235(b)(1)(B)." *Mendoza-Linares*, 51 F.4th at 1155 (citations omitted). "Under the plain language of § [1252](a)(2)(A)(iii), judicial review of such matters is barred" without exception. *Id.*

Even if the district court's order might be construed as reviewing the "procedures and policies adopted by the [Government] to implement the provisions of section 1225(b)(1)," 8 U.S.C. § 1252(a)(2)(A)(iv), such review is limited to certain claims filed in the U.S. District Court for the District of Columbia within 60 days of the challenged action, *see id.* § 1252(e)(3). Plaintiffs never filed anything in the D.C. District Court within 60 days of the Transit Rule being promulgated, so that limited exception does not apply. *See Mendoza-Linares*, 51 F.4th at 1155–59. Thus, the district court was prohibited from "enter[ing] . . . injunctive[] or other equitable relief," 8 U.S.C. § 1252(e)(1), because its review did not fall within the limited review permitted by Section 1252(e)(3).[3]

It is immaterial that the district court characterized its injunction as a remedy

---

[3] For the same reason, the prospective element of the district court's injunction— prohibiting application of the Transit Rule to Injunction Class Members, *see* 1-ER-4—is impermissible as applied to expedited removal under the same statutory provisions. However, the Transit Rule no longer exists, so there is no basis for DHS or EOIR to apply it prospectively.

for a due process violation. *See* 1-ER-77–78; Second Br. 37–38. In Sections 1252(a)(2)(A) and 1252(e), "Congress has . . . made clear its intent to preclude judicial review of constitutional claims, as well as questions of law." *Mendoza-Linares*, 51 F.4th at 1162 (citations, quotation marks, and alterations omitted). It would also be immaterial if the district court had grounded its injunction in the All Writs Act (as it did when issuing its second preliminary injunction), because Section 1252(a)(2)(A) applies "[n]otwithstanding any other provision of law (statutory or nonstatutory), *including*" the All Writs Act. 8 U.S.C. § 1252(a)(2)(A) (emphasis added). The district court had no authority to interfere with the Government's application of the Transit Rule in expedited removal.

## **<u>CONCLUSION</u>**

For the reasons explained in the Government's merits briefs and this supplemental brief, this Court should reverse the decision below and remand the case with directions to enter summary judgment for the Government on all counts and to vacate the declaratory and injunctive relief.

//

DATED: November 20, 2023        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation -
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
Email: alexander.j.halaska@usdoj.gov

*Counsel for the Government*

## **CERTIFICATE OF SERVICE**

I certify that on November 20, 2023, I served a copy of this document on the Court and all parties by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and a link to this document to all counsel of record.

DATED: November 20, 2023        Respectfully submitted,

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Senior Litigation Counsel
U.S. Department of Justice

*Counsel for the Government*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with Federal Rules of Appellate Procedure 32(a)(4) and 32(a)(5) because it is double-spaced, has margins of at least one inch on all four sides, and uses proportionally spaced, 14-point Times New Roman font; and that this brief complies with the page limitations of this Court's Order of November 6, 2023 (Dkt. 85), because it is not longer than fifteen pages.

DATED: November 20, 2023          Respectfully submitted,

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Senior Litigation Counsel
U.S. Department of Justice

*Counsel for the Government*

18