Nos. 22-55988, 22-56036

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AL OTRO LADO, INC., *et al.*,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

KRISTI NOEM, Secretary of Homeland Security, *et al.*,

*Defendants-Appellants/Cross-Appellees*,

and

the EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

*Appellant/Cross-Appellee.*

On Appeal from a Final Judgment Issued by the U.S. District Court for the Southern District of California (Civil Action No. 3:17-cv-02366-BAS-KSC)

## GOVERNMENT'S RESPONSE TO COURT ORDER REGARDING EN BANC REHEARING

YAAKOV M. ROTH
Acting Assistant Attorney General

AUGUST E. FLENTJE
Acting Director

EREZ REUVENI
Assistant Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

ALEXANDER J. HALASKA
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 Fax: (202) 305-7000
Email: alexander.j.halaska@usdoj.gov

*Counsel for the Government*

## INTRODUCTION

The panel's decision raises an of "exceptional importance." Fed. R. App. P. 40(b)(2)(D). It purports to extend the protections of asylum law to a broad, prospective class of undocumented aliens who are not within United States territory. This ruling and the corresponding declaratory judgment affirmed by the panel continues to burden the ability of the Department of Homeland Security (DHS)—especially U.S. Customs and Border Protection (CBP)—to manage the nation's borders at ports of entry, because it holds that the law requires CBP officials to inspect and process for asylum aliens who are in Mexico.

Given the importance of this issue, en banc consideration would be warranted. But this Court's ruling is causing ongoing uncertainty at the border at a critical time. The Acting Solicitor General has decided to seek certiorari from the Supreme Court if rehearing is denied, and the United States therefore requests an expeditious resolution of rehearing proceedings. This litigation has crept along for seven-and-a-half years, including more than two years of proceedings in this expedited appeal. Further appellate proceedings could last several months or longer, and in that context, "[j]ustice delayed is justice denied." *Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 311 (5th Cir. 2024).

## BACKGROUND

A.     **Factual Background**

This case concerns "metering" or "queue management," CBP's practice of regulating the pace at which undocumented aliens entered ports of entry along the U.S.-Mexico border to seek admission to the United States. On October 23, 2024, a divided three-judge panel of this Court issued an opinion holding that the asylum and expedited removal provisions of the Immigration and Nationality Act (INA) compel immigration officers to inspect for admissibility and process for asylum undocumented aliens who are on the Mexican side of the U.S.-Mexico border, thus functionally declaring metering categorically unlawful. *See Al Otro Lado v. EOIR*, 120 F.4th 606, 614–22 (9th Cir. 2024) (available at Dkt. 139). The panel also largely affirmed burdensome injunctive relief prohibiting asylum officers and immigration judges from applying the since-rescinded Third Country Transit Rule in immigration proceedings to aliens who would have entered the United States before that Rule took effect, had they not been prevented from crossing the border due to metering. *Id.* at 626–29.

After the panel affirmed the injunction in part, Appellees/Cross-Appellants (Plaintiffs) moved the district court for an indicative ruling on whether it would grant a motion to dissolve the injunction pursuant to Federal Rule of Civil Procedure 60(b)(5). *See* ECF No. 842, *Al Otro Lado v. Mayorkas*, No. 17-cv-2366 (S.D. Cal.).

Plaintiffs' motion acknowledges that there may still be injunction class members who are entitled to relief under the injunction who have not received it, but argues that fewer such class members have been identified over time and that the equities favor dissolving the injunction. *See id.* at 6–14. Plaintiffs also argued that dissolution of the injunction is fair to the class because it could eliminate the need for further review. *See id.* at 14–17. The Government filed a response, stating that it does not oppose in principle Plaintiffs' unilateral request to dissolve the injunction, but that it disagrees with any suggestion that the dissolution of the injunction would eliminate the need for further review. *See* ECF No. 846, *Al Otro Lado v. Mayorkas*, No. 17-cv-2366 (S.D. Cal.). The district court has not yet ruled on the motion.

On January 3, 2025, the Government applied to the Supreme Court for an extension of time to file a petition for writ of certiorari, which the Supreme Court granted. *See EOIR v. Al Otro Lado*, No. 24A674.

On January 8, 2025, after the deadline to seek rehearing had expired, this Court sua sponte directed the parties "to file simultaneous briefs setting forth their respective positions on whether this case should be reheard en banc." Order (Dkt. 144). The Government submits this brief in response.

**B.     Legal Background**

Congress has charged DHS and CBP with "[s]ecuring the borders" and "ports" of entry and "ensuring the speedy, orderly, and efficient flow of lawful traffic

3

and commerce," and "[c]arrying out the immigration enforcement functions." 6 U.S.C. §§ 202, 211(c), 211(g); 8 U.S.C. § 1103(a)(1), (3). The Secretary is empowered to "act[] as [s]he deems necessary for carrying out [her] authority" under the immigration laws. 8 U.S.C. 1103(a)(3).

The INA also requires immigration officers to inspect aliens "who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1). Under a process known as expedited removal, if an immigration officer determines an alien is inadmissible to the United States on certain grounds, "the officer shall order the alien removed from the United States without further hearing or review." *Id.* § 1225(b)(1)(A)(i). DHS also has discretion to place the alien in full removal proceedings under 8 U.S.C. § 1229a. *See Matter of E-R-M-*, 25 I. & N. Dec. 520, 521–24 (BIA 2011).

The INA generally permits an alien "who is physically present in the United States or who arrives in the United States" to apply for asylum, subject to certain exceptions. 8 U.S.C. § 1158(a)(1)–(2). Section 1158 has long been the "process by which refugees currently in the United States may be granted asylum." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 433 (1987) (contrasting Section 1158 with 8 U.S.C. § 1157, which "governs the admission of refugees" in "foreign countries").

If an alien who is processed for expedited removal "indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution," the officer shall suspend the immediate execution of removal and instead "refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii). The processes by which the Government determines an alien's admissibility to the United States "obviously" are "held in the country." *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173 (1993).

## ARGUMENT

This case involves at least one question of "exceptional importance," Fed. R. App. P. 40(b)(2)(D), namely, whether the INA, at 8 U.S.C. §§ 1158(a)(1), 1225(a)(1), 1225(a)(3), and 1225(b)(1)(A)(ii), applies to aliens outside the United States. Whether these provisions governing asylum and the inspection and expedited removal of undocumented aliens apply outside the United States is a question of great significance that implicates core Executive Branch authority to manage the border. The Supreme Court, for example, has repeatedly granted certiorari to address "important questions" of "federal power" over "the law of immigration and alien status." *Arizona v. United States*, 567 U.S. 387, 394 (2012); *see also Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 579 U.S. 547 (2016) (per curiam). And "this country's border-control policies are of crucial importance to the national

5

security and foreign policy of the United States." *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004).

For the reasons discussed in the Government's merits briefs, and as two judges of this Court have explained, the panel erred in interpreting Sections 1158 and 1225 as applying to aliens outside the United States. *See* Opening Br. for the Government 27–39 (First Br.) (Dkt. 12); Reply and Response Br. for the Government 6–24 (Third Br.) (Dkt. 62); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1016–45 (9th Cir. 2020) (Bress, J., dissenting from the denial of a stay pending interlocutory appeal); *Al Otro Lado*, 120 F.4th at 629–46 (R. Nelson, J., dissenting). Both the text and the context of Sections 1158 and 1225 make clear that the statutes apply exclusively to aliens who are within the United States. They do not apply to an alien *near* the United States who is "stopped by officials at the border." *Al Otro Lado*, 120 F.4th at 620.

The panel nonetheless erroneously concluded that these asylum and expedited removal provisions do apply to aliens in Mexico. It based its interpretation on two faulty premises. First, the panel relied exclusively on the rule against surplusage to hold that "arrives in" *must* include at least some aliens that are not already physically "present in" the United States. *Al Otro Lado*, 120 F.4th at 615–16. In so doing, the panel disregarded the historical immigration context behind these terms. In immigration law, aliens who arrived at a port of entry were generally not considered to have entered the country as a legal matter. *See* First Br. 36–38; Third Br. 8–12. The

6

use of both "arrives in" and "present in" in Sections 1158 and 1225 thus reasonably serves to ensure that those who had just arrived within United States territory are also entitled to apply for asylum. *See* First Br. 36–38; Third Br. 8–12. Indeed, "redundancies are common in statutory drafting," including "sometimes in a congressional effort to be doubly sure." *Pugin v. Garland*, 599 U.S. 600, 609 (2023).

Second, the panel erroneously determined that the presumption against extraterritorial application of statutes was overcome, despite the absence of any clear statutory indication of extraterritorial application, because Sections 1158 and 1225 "address 'conduct'—the arrival of noncitizens to the United States—'that almost always originates outside the United States.'" *Al Otro Lado*, 120 F.4th at 622 (quoting *United States v. Ubaldo*, 859 F.3d 690, 700 (9th Cir. 2017)). But as Judge Nelson explained, if conduct by an alien that originates outside the United States were enough to make statutes extraterritorial, it would virtually "eliminate[] the presumption against extraterritoriality from the entire immigration code," as "[i]mmigration always originates outside the United States." *Id.* at 639 (R. Nelson, J., dissenting). In any event, the panel's reasoning is foreclosed by *Sale*, which demonstrates that conduct originating outside the United States is not sufficient to support the extraterritorial application of the INA. *See Sale*, 509 U.S. at 170–77; *see also Hernandez v. Mesa*, 589 U.S. 93, 110 (2020) ("We presume that statutes do not apply extraterritorially to ensure that the Judiciary does not erroneously adopt an interpretation of

7

U.S. law that carries foreign policy consequences not clearly intended by the political branches." (quotation marks omitted)).

This erroneous interpretation has far-reaching consequences. Any legal requirement to apply the asylum and expedited removal provisions to those who are in Mexico, but who merely approach the border at a port of entry, hamstrings the Government's ability to control intake at its own ports. The legal ruling and accompanying declaratory judgment thus present significant hurdles for DHS, which has continued to face extreme burdens and resources constraints due to high levels of migration.

Plaintiffs' pending Rule 60(b) Motion does not diminish the importance of this issue. Plaintiffs have suggested that an indicative ruling from the district court on whether it would dissolve the injunction "may impact whether this case meets the criteria for rehearing en banc." Pls.' Mot. to Extend Rehearing Br. Deadline 2 (Dkt. 147). The Government disagrees. Even if the district court were to indicate it would grant Plaintiffs' motion to dissolve this injunction, that would not eliminate the need for further review. Based on its erroneous interpretation of the asylum and expedited removal statutes, a panel of this Court affirmed a broad declaratory judgment that declares metering practices unlawful as to a prospective class of aliens who are or

8

will be denied access to the asylum process. Even if the permanent classwide injunction were dissolved, this issue would remain live, and is one of exceptional importance.[1]

## CONCLUSION

The panel's decision is incorrect, and the Acting Solicitor General has decided to seek certiorari from the Supreme Court if rehearing is denied. The Government respectfully requests that this Court expeditiously issue an order resolving these rehearing proceedings.

//

---

[1] And, even if the classwide injunction were dissolved, the Government would remain obligated "to restore the *status quo ante* for the named Plaintiffs," including Beatrice Doe. 1-ER-003. That individual injunction is predicated on the same justification as the classwide injunction, and thus presents the same question of "exceptional importance." Fed. R. App. P. 40(b)(2)(D).

9

DATED: February 28, 2025      Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

AUGUST E. FLENTJE
Acting Director

EREZ REUVENI
Assistant Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

*/s/Alexander J. Halaska*
ALEXANDER J. HALASKA
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
Email: alexander.j.halaska@usdoj.gov

*Counsel for the Government*

## CERTIFICATE OF SERVICE

I certify that on February 28, 2025, I served a copy of this document on the Court and all parties by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and a link to this document to all counsel of record.

DATED: February 28, 2025        Respectfully submitted,

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Senior Litigation Counsel
U.S. Department of Justice

*Counsel for the Government*

## CERTIFICATE OF COMPLIANCE

I certify this motion complies with Federal Rules of Appellate Procedure 27(d)(1)(D) and 27(d)(1)(E) because it is double-spaced, has margins of at least one inch on all four sides, and uses proportionally-spaced, 14-point Times New Roman font.

I certify this motion complies with the type-volume limitation of this Court's Order (Dkt. 144) because it contains 2,008 words, including headings and footnotes, as measured by the word processing application used to prepare this brief.

DATED: February 28, 2025              Respectfully submitted,

                                                                   */s/ Alexander J. Halaska*
                                                                   ALEXANDER J. HALASKA
                                                                   Senior Litigation Counsel
                                                                   U.S. Department of Justice

                                                                   *Counsel for the Government*