Nos. 22-55988, 22-56036

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

AL OTRO LADO, INC., *et al.*,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

KRISTI NOEM, Secretary of Homeland Security, *et al.*,

*Defendants-Appellants/Cross-Appellees*,

and

The EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

*Appellant/Cross-Appellee*.

_____

APPEAL FROM FINAL JUDGMENT OF THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA
No. 17-cv-02366-BAS-KSC

_____

## BRIEF IN OPPOSITION TO EN BANC REHEARING

---

Melissa Crow
CENTER FOR GENDER & REFUGEE STUDIES
1121 14th Street, N.W., Suite 200
Washington, DC 20005
(202) 355-4471

Suchita Mathur
Rebecca Cassler
Michelle Lapointe
AMERICAN IMMIGRATION COUNCIL
2001 L Street, NW
Suite 500
PMB2026
Washington, DC 20036
(202) 507-7552

Stephen M. Medlock
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500

Matthew E. Fenn
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600

Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Neela Chakravartula
CENTER FOR GENDER & REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

Robert Pauw
CENTER FOR GENDER & REFUGEE STUDIES
c/o Gibbs Houston Pauw PLLC
1000 2nd Avenue, Suite 1600
Seattle, WA 98104
(206) 682-1080

Matthew H. Marmolejo
MAYER BROWN LLP
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071
(213) 229-9500

Sarah M. Rich
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................3

TABLE OF AUTHORITIES ..........................................................................4

INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................7

PROCEDURAL HISTORY............................................................................9

ARGUMENT ............................................................................................11

I.     There is no basis for rehearing en banc. .....................................................11

     A.     The Opinion is fully consistent with this Court's precedent.............12

          1.     The Opinion's interpretation of "arrives in" does not conflict with any opinion of this Court...................................12

          2.     The Opinion follows this Court's collateral effects opinions....................................................................13

          3.     The Opinion correctly applies *Vietnam Veterans*, and the Dissent misreads *Badgley*. .......................................15

     B.     The Opinion does not conflict with a decision of the U.S. Supreme Court....................................................................16

     C.     The Opinion does not conflict with authoritative decisions of other courts of appeals........................................................16

     D.     The Opinion does not raise any questions of exceptional importance. ....................................................................18

II.     The Opinion is correct. ..........................................................................22

CONCLUSION .........................................................................................24

3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020)..........................................................................22

*Alli v. Decker*,
    650 F.3d 1007 (3d Cir. 2011)..........................................................................20

*Biden v. Texas*,
    597 U.S. 785 (2022).........................................................................................20

*Biodiversity Legal Foundation v. Badgley*,
    309 F.3d 1166 (9th Cir. 2002)........................................................................16

*Brito v. Garland*,
    22 F.4th 240 (1st Cir. 2021)...........................................................................20

*Cap. Area Immigrants' Rights Coal. v. Trump*,
    471 F. Supp. 3d 25 (D.D.C. 2020)..................................................................20

*Cath. Soc. Servs., Inc. v. INS*,
    232 F.3d 1139 (9th Cir. 2000)........................................................................15

*Cela v. Garland*,
    75 F.4th 355, 361 (4th Cir. 2023) .................................................................13

*Cobell v. Norton*,
    240 F.3d 1081 (D.C. Cir. 2001) .....................................................................17

*EEOC v. Liberty Loan Corp.*,
    584 F.2d 853 (8th Cir. 1978)..........................................................................15

*Forest Guardians v. Babbitt*,
    174 F.3d 1178 (10th Cir. 1999)......................................................................17

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) ................................................................ 8, 13, 14, 16

*Gonzales v. DHS*,
    508 F.3d 1227 (9th Cir. 2007)................................................................ 14, 15

*Gonzalez v. ICE*,
    975 F.3d 788 (9th Cir. 2020).................................................................. 14, 15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*INS v. Cardoza-Fonseca*,
  480 U.S. 421 (1987) .........................................................................13

*Jones v. Bonta*,
  34 F.4th 704 (9th Cir. 2022) ...........................................................12

*Koonwaiyou v. Blinken*,
  69 F.4th 1004 (9th Cir. 2023) .........................................................13

*Make the Road N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ........................................................20

*Mt. Emmons Mining Co. v. Babbitt*,
  117 F.3d 1167 (10th Cir. 1997).......................................................17

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010).........................................................20

*S. Carolina v. United States*,
  907 F.3d 742 (4th Cir. 2018)...................................................... 17, 18

*Sale v. Haitian Ctrs. Council, Inc.*,
  509 U.S. 155 (1993) .........................................................................16

*Sierra Club v. Gorsuch*,
  715 F.2d 653 (D.C. Cir. 1983) .................................................. 17, 18

*Sierra Club v. Thomas*,
  828 F.2d 783 (D.C. Cir. 1987) .................................................. 17, 18

*Sturgeon v. Frost*,
  577 U.S. 424 (2016) .........................................................................22

*United States v. Boler*,
  115 F.4th 316 (4th Cir. 2024) .........................................................12

*United States v. Menasche*,
  348 U.S. 528 (1955) .........................................................................22

*Vietnam Veterans of Am. v. CIA*,
  811 F.3d 1068 (9th Cir. 2016)..................................... 15, 16, 17, 23

*Wilson v. Safelite Grp., Inc.*,
  930 F.3d 429 (6th Cir. 2019)...........................................................12

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Wyo-Ben Inc. v. Haaland*,
63 F.4th 857 (10th Cir. 2023) .........................................................................18

*Yang v. INS*,
79 F.3d 932 (9th Cir. 1996)..............................................................................13

**Statutes**

5 U.S.C. §706(1) ...................................................... 7, 8, 15, 16, 17, 20, 23

8 U.S.C. §1158.................................................... 10, 11, 12, 16, 19, 23

8 U.S.C. §1158(a)(1)..........................................................................22

8 U.S.C. §1225 ...................................................... 10, 15, 16, 19

8 U.S.C. §1226 ...............................................................................14

8 U.S.C. §1229a ..............................................................................15

8 U.S.C. §1252(f)(1) ...................................................... 11, 13, 14, 15, 20

**Regulations and Rules**

8 C.F.R. §1.2 ..................................................................................23

8 C.F.R. §208.13(c)(4) (2020) .........................................................9

84 Fed. Reg. 33,829 (July 16, 2019).................................................9

Fed. R. App. P. 40(b)(2) ...................................................................7

Fed. R. App. P. 40(b)(2)(A) ..........................................................7, 11

Fed. R. App. P. 40(b)(2)(B) ........................................................ 8, 11, 16

Fed. R. App. P. 40(b)(2)(C) ........................................................ 8, 11, 16

Fed. R. App. P. 40(b)(2)(D) ........................................................ 8, 11, 18

Fed. R. Civ. P. 23(e)........................................................................21

**Other Authorities**

Exec. Order No. 14,165 of Jan. 20, 2025, *Securing Our Borders*,
90 Fed. Reg. 8467 (Jan. 30, 2025) ....................................................19

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

En banc rehearing is not warranted in this case. Plaintiffs-Appellees/Cross-Appellants Al Otro Lado, Inc. and a certified class of asylum seekers ("Plaintiffs") filed this lawsuit in July 2017 to challenge Defendants-Appellants/Cross-Appellees' ("Defendants") practice of turning back, without inspection, asylum seekers approaching ports of entry. While the district court considered numerous claims, this Court limited the appeal to Plaintiffs' APA §706(1) claim, challenging a "formalized metering policy" that was rescinded years ago. *Al Otro Lado v. Exec. Off. of Immigr. Rev.*, 120 F.4th 606, 612 n.1 (9th Cir. 2024) (the "Opinion" or "Op." from 609-629).[1] And the majority recognizes that the remaining key issue for relief is the permanent injunction, which is limited to a finite class of noncitizens who sought access to ports of entry before July 16, 2019. The panel majority in this case correctly decided all issues, and none of the bases for granting en banc review are met. *See* Fed. R. App. P. 40(b)(2).

First, the panel faithfully applies this Court's precedent to all issues. Fed. R. App. P. 40(b)(2)(A). While the dissent disagrees with the majority's reading of certain precedents, there is no other authoritative decision on the central issues in this case.

---

[1] Judge R. Nelson dissented (the "Dissent" from 629-46).

Second, the panel decision does not conflict with any Supreme Court precedent. Fed. R. App. P. 40(b)(2)(B). The injunctive relief permitted by the panel is fully consistent with this Court's collateral effects decisions, which the Supreme Court preserved in *Garland v. Aleman Gonzalez*, 596 U.S. 543, 553 n.4 (2022). The dissent does not dispute the available scope of injunctive relief.

Third, there is no conflict with decisions of other courts of appeals. Fed. R. App. P. 40(b)(2)(C). No other court of appeals has addressed the question of statutory construction raised in this appeal. While the panel suggests some tension with Tenth Circuit precedent on withholding agency action under APA §706(1), the Tenth Circuit has clarified that its own precedent is not so rigid, rendering any tension illusory. Moreover, none of the related circuit decisions involved a situation where, as here, the agency refused to fulfill, in any form, a mandatory statutory duty.

Finally, this case does not raise any questions of exceptional importance. Fed. R. App. P. 40(b)(2)(D). While access to the asylum process is important, this proceeding relates to a policy that was rescinded years ago. The majority's holding on each issue is narrow, and the dissent agrees that the majority's careful interpretations "limit[] the practical impact of its opinion." Dissent at 641. Moreover, the limited injunction that remains has little practical benefit, and Plaintiffs have requested unopposed relief from that injunction that will further narrow its reach. No further review by this Court en banc is warranted.

## PROCEDURAL HISTORY

In April 2018, Defendants issued a formalized turnback policy authorizing officials to "meter the flow of travelers at the land border" based on "the port's processing capacity." Op. at 611. Under that policy, whenever U.S. Customs and Border Protection ("CBP") officers deemed a port of entry ("POE") on the U.S.-Mexico border to be "at capacity," "they turned away all people lacking valid travel documents." *Id.* at 610. This suit focuses on that "formalized metering policy." *Id.* at 612 n.1.

In July 2019, Defendants issued the "Asylum Transit Rule"—an interim final rule that made noncitizens who traveled through a third country ineligible for asylum unless they previously sought and received a final denial of protection in that country. Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,843 (July 16, 2019), codified at 8 C.F.R. §208.13(c)(4) (2020). Plaintiffs sought, and the district court entered, a preliminary injunction barring the application of the Asylum Transit Rule to a subclass of asylum seekers ("PI subclass") who were turned back before July 16, 2019, and subjected to the Asylum Transit Rule only because of Defendants' prior turnbacks. ER-182-217.

In September 2021, the district court granted Plaintiffs summary judgment on their APA §706(1) and due process claims, and granted summary judgment to Defendants on the Alien Tort Statute ("ATS") and nonstatutory review claims. ER-84-

128. The district court did not reach Plaintiffs' §706(2) claim. *Id.* The district court converted the preliminary injunction into a permanent injunction ("PI") and issued declaratory relief under §706(1) and the Fifth Amendment but did not enjoin turnbacks of asylum seekers. ER-35-83. CBP rescinded the metering policy in November 2021. ER314-16.

On October 23, 2024, a divided panel of this Court affirmed the §706(1) holding and declined to reach any other issue.

First, the majority held that even though the formalized turnback policy had been rescinded, the case was not moot because the district court had entered injunctive relief that could be modified. Op. at 614 n.3.

Next, the panel concluded that Defendants "withheld" agency action by turning away noncitizens. Op. at 625. To do so, the majority construed two statutes, 8 U.S.C. §§1158 and 1225, and concluded that a noncitizen "'arrives in the United States' under the current version of §1158 when she encounters officials at a land border." *Id.* at 620. The majority also construed §1225 to impose a mandatory duty on Defendants to inspect arriving noncitizens. *Id.* at 620-21. Accordingly, the majority concluded that the Defendants unlawfully withheld required agency action by "turn[ing] away noncitizens without taking any steps to keep track of who was being turned away or otherwise allowing them to open asylum applications." *Id.* at 624.

The majority affirmed the declaratory relief and modified the permanent injunction. *Id.* at 625-26. The majority affirmed the negative relief portions of the injunction that prohibit the government from applying the Asylum Transit Rule to the PI subclass, as well as affirmative relief requiring the government to identify and notify possible PI subclass members. *Id.* at 628-29. However, the majority concluded the portion of the injunction requiring the government to take affirmative steps "to reopen or reconsider (or to move to reopen or reconsider) an asylum officer, IJ, or BIA decision in a removal proceeding" of a PI subclass member, even absent a motion by the noncitizen, was not permissible under 8 U.S.C. §1252(f)(1). *Id.* at 629.

Judge R. Nelson dissented and would have concluded that the phrase "arrives in the United States" in 8 U.S.C. §1158 means "physically present in the United States." Dissent at 629-30. The dissent also disagreed that Defendants had "withheld" agency action and instead argued that they had only "delayed" agency action. *Id.* at 641-44. The dissent would have rejected Plaintiffs' remaining claims on the merits as well.

## ARGUMENT

### I. There is no basis for rehearing en banc.

None of the bases for en banc review are met in this case. *See* Fed. R. App. P. 40(b)(2)(A)-(D). The panel faithfully applied circuit precedent, and there is no on-point Supreme Court precedent. There is no tension between this Court's cases and

other courts' decisions on the requirements of APA §706(1). Moreover, this case is based upon a policy that was rescinded in 2021, and even the dissent recognizes that the practical impact of the decision is limited.

### A. The Opinion is fully consistent with this Court's precedent.

#### 1. The Opinion's interpretation of "arrives in" does not conflict with any opinion of this Court.

The panel majority and the dissent disagree about how best to interpret the "arrives in" language of §1158, but the dissent points to no decision of this Court requiring a different outcome. Instead, while conceding that the words of a statute must be read in context, Dissent at 633, the dissent employs a corpus linguistics analysis that decontextualizes the "arrives in" language and is not required under binding circuit precedent, Op. at 616 n.5. *See Jones v. Bonta*, 34 F.4th 704, 714 n.6 (9th Cir. 2022) (declining to apply corpus linguistics where neither party requested it), *vacated on other grounds*, 47 F.4th 1124 (9th Cir. 2022); *see also United States v. Boler*, 115 F.4th 316, 325 n.5 (4th Cir. 2024) ("corpus linguistics can be quite a flawed tool" because it largely ignores the context of legal language); *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 445-46 (6th Cir. 2019) (Stranch, J., concurring) (corpus linguistics "risk[s] privileging the most newsworthy connotations of a term over its ordinary meaning"). The majority Opinion also complies with longstanding precedent that "requires a court, if possible, to give effect to each word and clause in a

12

statute." *See, e.g., Koonwaiyou v. Blinken*, 69 F.4th 1004, 1007 (9th Cir. 2023) (citation omitted).

The majority also properly addresses inapplicable circuit caselaw regarding the distinction between 8 U.S.C. §1157 (refugee resettlement) and §1158 (asylum). *See* Op. at 619-20 (addressing *Yang v. INS*, 79 F.3d 932 (9th Cir. 1996)). *Yang*'s "general background summar[y]" of these statutes is irrelevant because "[n]othing about [its] analysis . . . suggested that [this Court] was trying to define which statute would apply to someone seeking protection at the border." *Id*.[2]

## 2. The Opinion follows this Court's collateral effects opinions.

The panel decision is also consistent with both Ninth Circuit case law regarding 8 U.S.C. §1252(f)(1) and the Supreme Court's decision in *Aleman Gonzalez*, 695 U.S. at 543. Section 1252(f)(1) prohibits class-wide injunctions that order federal officials "to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain statutory provisions. 596 U.S. at 550. However, "a court may enjoin the unlawful operation of a provision *that is not specified in §1252(f)(1)* even if that injunction has some collateral effect on the operation of a covered provision."

---

[2] For the same reasons, the majority correctly distinguished general background explanations of these statutes in other cases addressing different factual and legal questions than presented here. Op. at 619-20 & n.10 (distinguishing *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), and *Cela v. Garland*, 75 F.4th 355, 361 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2657 (2024)).

*Id*. at 553 n.4 (citing *Gonzales v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007)). The panel decision is fully in line with this "collateral effects" doctrine.

In *Gonzales v. DHS*, the district court had enjoined the unlawful application of statutory provisions regarding adjustment of status. 508 F.3d at 1232-33. This had a "collateral effect" on decisions made by immigration judges in removal proceedings, precluding the issuance of orders of removal in certain cases. *Id.* at 1233. Nevertheless, this Court held that §1252(f)(1) "does not prohibit the current injunction because . . . it directly implicates the adjustment of status provision which [is not covered by §1252(f)(1)], notwithstanding that a reinstatement proceeding may be a collateral consequence of an unsuccessful adjustment application." *Id.*

Similarly, in *Gonzalez v. ICE*, 975 F.3d 788 (9th Cir. 2020), the district court enjoined specific methods of issuing immigration detainers. Even though the injunction had a collateral impact on §1226, a provision covered by §1252(f)(1), this Court found the injunction permissible because the authority to issue detainers is found at 8 U.S.C. §1357, which is not a covered provision. *Id.* at 813-15 & n.19.

So too, here. As to the PI subclass, the district court enjoined the Government's unlawful implementation of the asylum statute, §1158(a)(1), which is not

covered by §1252(f)(1). Op. at 628-29. That the injunction has "some collateral effect" on §1229a or §1225 poses no issue.[3] The panel's decision is fully consistent with §1252(f)(1), *Aleman Gonzalez*, and this circuit's "collateral effects" caselaw. *Gonzalez*, 975 F.3d at 813-15; *Gonzales*, 508 F.3d at 1232-33; *see also Cath. Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc) (finding §1252(f)(1) "[did] not apply" even though injunction regarding §1255a had the result of prohibiting INS from executing certain removal orders).

### 3. The Opinion correctly applies *Vietnam Veterans*, and the Dissent misreads *Badgley*.

The panel also faithfully followed this Court's precedent in holding that the agency improperly withheld—instead of unreasonably delayed—a mandatory duty. Op. at 623-24 (citing *Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068 (9th Cir. 2016)). As explained in *Vietnam Veterans*, "[i]t is clear that [APA] section 706(1) applies to the situation where a federal agency refuses to act in disregard of its legal duty to act." 811 F.3d at 1079 (quoting *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 856 (8th Cir. 1978)). The Court did not require a "date-certain deadline" to find such an action withheld, as opposed to merely delayed. Op. at 622-23 (citation omitted)

---

[3] The panel was careful to uphold only those portions of the injunction that relate to the operation of §1158 and overturned the portion that, in its view, directly "interfere[d] with the Government's efforts to operate" §1225 and §1229a (both covered provisions). Op. at 629 (citation omitted). Specifically, the panel overturned the requirement that the Government take the initiative to reconsider determinations previously made in removal proceedings absent a motion by the noncitizen. *Id.*

(discussing *Vietnam Veterans*). Although the dissent argues (Dissent at 641-42) that *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166 (9th Cir. 2002), governs whether agency action constitutes withholding, the import of *Badgley* is that failure to meet a statutory deadline is only *one* form of unlawful withholding. Op. at 623 n.13 (*Badgley* "does not say that an agency can have withheld action only if there is a statutory deadline"). *Badgley* does not change the outcome here.

**B.    The Opinion does not conflict with a decision of the U.S. Supreme Court.**

The panel's decision does not conflict with any decision of the U.S. Supreme Court. Fed. R. App. P. 40(b)(2)(B). No Supreme Court opinion interprets §§1158 and 1225 in the context presented by this case or distinguishes between "withholding" and "delay" under §706(1). Further, *Aleman Gonzalez* preserved this Court's collateral effects doctrine. *See supra* Part II.A.2. Finally, the majority Opinion does not conflict with *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155 (1993), a case involving the application of a now-abrogated deportation statute to noncitizens encountered on the high seas—another scenario inapplicable to the facts at issue in this case. Op. at 622 n.11; *cf.* Dissent at 639-40.

**C.    The Opinion does not conflict with authoritative decisions of other courts of appeals.**

The panel's decision does not implicate or create a circuit split. Fed. R. App. P. 40(b)(2)(C).

The majority and dissent suggest there is tension between this Court's *Vietnam Veterans* precedent and the law of other circuits on §706(1), but any tension is illusory. None of the cases cited involved a situation where the agency "refuses to accept, in any form, a request" for relief. Op. at 623; *see S. Carolina v. United States*, 907 F.3d 742, 760 (4th Cir. 2018) (agency missed deadline); *Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001) (agency delayed fulfilling trust obligations to Individual Indian Money beneficiaries); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190-91 (10th Cir. 1999) (agency missed deadline); *Sierra Club v. Thomas*, 828 F.2d 783, 797 (D.C. Cir. 1987) (agency started but did not complete rulemaking); *Sierra Club v. Gorsuch*, 715 F.2d 653, 658 (D.C. Cir. 1983) (agency had not yet taken action but stated it was considering doing so).

Although the majority characterizes the Ninth Circuit as taking a "different approach" from the Tenth Circuit in *Forest Guardians*, this does not warrant rehearing. *See* Op. at 623 (discussing *Forest Guardians*). *Forest Guardians* suggested that "unlawful[] with[olding]" is limited to situations where there is a Congressionally imposed "date-certain deadline" in an agency's "organic statute." 174 F.3d at 1190. However, *Forest Guardians* did not overrule the Tenth Circuit's prior decision in *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167 (10th Cir. 1997), which holds that an agency that "ignores the duty Congress places on" it "unlawfully withholds agency action." *Id.* at 1170, 1172. Indeed, the Tenth Circuit recently characterized

17

*Forest Guardians* as "seemingly indicat[ing] that violating a statutory deadline is the *typical* mechanism by which an agency withholds action unlawfully." *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 876 n.19 (10th Cir. 2023) (emphasis added).

The dissent implies that the Fourth and D.C. Circuits have adopted a similar categorical rule on this issue, *see* Dissent at 642, but that is incorrect. Op. at 623 n.13 (addressing Fourth and D.C. Circuit precedent). The Fourth Circuit described "failure to meet a hard statutory deadline" as merely an example of "agency action unlawfully withheld"—which implies that there are other examples. *See S. Carolina*, 907 F.3d at 760. Nor has the D.C. Circuit established such a categorical rule. *See Sierra Club v. Thomas*, 828 F.2d at 797 (noting that the court grants "considerable deference" to an agency's decisionmaking process "absent a precise statutory timetable *or other factors counseling expeditious action*," (quoting *Sierra Club v. Gorsuch*, 715 F.2d at 658 (alteration omitted, emphasis added)).

**D.    The Opinion does not raise any questions of exceptional importance.**

This case raises no questions of exceptional importance. Fed. R. App. P. 40(b)(2)(D). It relates to a rescinded policy, and the majority's careful, narrow holdings limit the decision's practical impact. Moreover, while the injunction benefited noncitizens when it was entered, very few have sought relief in recent years, and few, if any, are likely to benefit from further relief.

18

This case focuses on two policy memos from 2018 entitled "Metering Guidance," ER-516, and "Prioritization-Based Queue Management," ER-518. Defendants rescinded these policies on November 1, 2021. ER-314. While Defendants continue to restrict noncitizens' access to the asylum process, their legal justifications have shifted to Presidential Proclamations and other sources of law. *See, e.g.*, Exec. Order No. 14,165 of Jan. 20, 2025, *Securing Our Borders*, 90 Fed. Reg. 8467 (Jan. 30, 2025). The rescinded 2018 policies have no relevance to the management of the southern border today.

The majority's other holdings are also narrow, which even the dissent recognizes "limits the practical impact of its opinion." Dissent at 641. First, the majority's construction of "arriving in" applies when noncitizens "encounter officials at the border." Op. at 615-16. Thus, noncitizens must reach the "doorstep" of the United States before §§1158 and 1225 require Defendants to act, and U.S. officials cannot avoid their statutory duties based on a game of inches. *Id.* This holding does not "eliminate[] the presumption against extraterritoriality from the entire immigration code," as the dissent claims, Dissent at 639, but rather applies the presumption specifically to §1225, which imposes requirements for how to handle noncitizens arriving at the border (who "shall be inspected by immigration officers," 8 U.S.C. §1225).

Second, the APA "action unlawfully withheld" decision is decidedly narrow. Op. at 622-25. It only applies when the agency "refuses to accept, in any form, a

request that it take a required action." *Id.* at 623-24. This gives agencies latitude over how they accept and process requests, including suggesting that "minimal steps by the Government" would move the analysis from "withholding" to "delay." *Id.* at 624.

Finally, with the passage of time, the practical effect of the relief has greatly diminished.[4] The majority concluded the remaining §706(1) claim was not moot because the injunctive relief "could be modified." Op. at 614, n.3. That injunction benefits a finite class of noncitizens who attempted to enter the United States over five years ago (before July 2019) and were later subjected to the Asylum Transit Rule (vacated nearly five years ago, *see Cap. Area Immigrants' Rights Coal. v. Trump*, 471 F. Supp. 3d 25, 37 (D.D.C. 2020)). The majority narrowed that injunction to eliminate any requirement that Defendants "on [their] own initiative, … reopen or reconsider (or … move to reopen or reconsider)" an adverse removal decision. Op. at 629 (emphasis omitted). That leaves intact just two aspects: (1) the duty for all parties to "make all reasonable efforts to identify" PI subclass members, and (2) the

---

[4] Defendants may argue that whether §1252(f)(1) prohibits classwide declaratory relief is an important question. But as the Supreme Court has repeatedly said, §1252(f)(1) "is nothing more or less than a limit on injunctive relief." *Biden v. Texas*, 597 U.S. 785, 801 (2022) (citation omitted). All circuits that have addressed this issue agree that §1252(f)(1) does not bar declaratory relief. *Op.* at 625 (following *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010)); *accord Brito v. Garland*, 22 F.4th 240, 250-52 (1st Cir. 2021); *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011).

prohibition on applying the (vacated) Asylum Transit Ban to deny immigration relief for the PI subclass members. *Id.* at 626, 629.

In fact, the injunction appears to have already achieved the maximum benefit for the subclass, which led to Plaintiffs' motion for partial relief from judgment under Rule 60(b). *See* ECF No. 842.[5] While most subclass members who benefited were in removal proceedings when the injunction was entered and required no additional screening to obtain relief, Defendants have reviewed 3,225 cases of potential PI subclass members with unexecuted removal orders, and only four individuals (0.1% of reviewed cases) were eligible for any relief under current screening procedures, with the last positive identification in May 2023. *See* ECF No. 847 at 2, 4 n.2. Likewise, Plaintiffs have identified only two subclass members since 2022 who were removed and sought to renew their asylum claims pursuant to the PI. ECF No. 842 at 6. Given the ever-diminishing likelihood of additional subclass members obtaining relief, Plaintiffs requested (and Defendants do not oppose) further narrowing the injunction to eliminate any requirements to identify new class members. ECF No. 842 at 6-7. This unopposed relief would further limit the practical importance of the panel's decision.

---

[5] Plaintiffs made this request in the district court because it affects a certified class and requires court review and approval. ECF No. 842 at 14-17; *see* Fed. R. Civ. P. 23(e). Because the district court lacks jurisdiction to grant this relief while this appeal is pending, Plaintiffs sought an indicative ruling under Rule of Civil Procedure 62.1. ECF No. 842.

**II.     The Opinion is correct.**

In any event, the panel's decision is correct on the merits. The district judge, a Ninth Circuit motions panel, and a Ninth Circuit merits panel (this panel) have all considered the core issues in this appeal and reached the same conclusion. As the panel explains in great detail, utilizing traditional canons of statutory interpretation, a noncitizen who approaches a port of entry but is stopped by U.S. officials at the border (as occurred pursuant to the now-rescinded metering policy) may seek asylum because she "arrives in the United States," 8 U.S.C. §1158(a)(1). Op. at 615-20; *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1010-14 (9th Cir. 2020) (motions panel explaining why the district court's analysis on this issue was "likely correct"). The panel considers the plain meaning of the statute as the Supreme Court has long instructed—in its context, "with a view to [its] place in the overall statutory scheme," *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quotation omitted), and giving effect to every "every clause and word of [the] statute," *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (citation omitted).

The Dissent's interpretation of "arrives in the United States" flouts a cardinal principle of statutory interpretation—the rule against surplusage. If, as the dissent suggests, the "arrives in" language is necessary to address the entry fiction, Dissent at 636, then it would refer to noncitizens who have crossed the border and are physically—but not legally—present in the United States. In that scenario, one of the

categories referenced in §1158—noncitizens who "arrive[] in the United States"—would be merely a subset of the other category—noncitizens who are "physically present in the United States." *See* Op. at 616 n.6. Congress knew better when it drafted the INA. The majority's conclusion that a noncitizen who presents herself to a border official at a port of entry "has 'arrive[d] in the United States …,' whether she is standing just at the edge of the port of entry or somewhere within it," *id.* at 617, better reflects the meaning of §1158 because it avoids such redundancy. This interpretation also better comports with the broader goals of the immigration system because it avoids giving arriving noncitizens a "perverse incentive" to cross the border between ports of entry *Id.* (citation omitted).

The majority's interpretation is also consistent with Defendants' regulation, *see* Op. at 620, which defines "arriving alien" as "an applicant for admission *coming or attempting to come* into the United States at a port-of-entry." 8 C.F.R. §1.2 (emphasis added). Defendants' use of the present progressive tense clearly encompasses individuals who have not yet crossed the border due to Defendants' unlawful turnbacks.

The merits panel's decision also correctly concludes that a refusal to undertake a mandatory action is one way to withhold such action. Op. at 622-25 (following *Vietnam Veterans*, 811 F.3d 1068). To conclude otherwise would turn the plain meaning of APA §706(1) on its head. As the panel explains, "delay" occurs when

23

an agency will eventually, with the passage of time, complete an action. *Id.* at 624. Therefore, refusal to act cannot be understood as mere delay.

Considering these well-reasoned holdings, it was appropriate for the panel to affirm the declaratory judgment and portions of the permanent injunction. *Id.* at 625-29.

## CONCLUSION

For all of the reasons stated herein, rehearing en banc is not warranted.

Dated: February 28, 2025

Respectfully submitted,

*/s/ Stephen M. Medlock*

Melissa Crow
CENTER FOR GENDER & REFUGEE STUDIES
1121 14th Street, N.W., Suite 200
Washington, DC 20005
(202) 355-4471

Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Suchita Mathur
Rebecca Cassler
Michelle Lapointe
AMERICAN IMMIGRATION COUNCIL
2001 L Street, NW
Suite 500
PMB2026
Washington, DC 20036
(202) 507-7552

Neela Chakravartula
CENTER FOR GENDER & REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

Robert Pauw
CENTER FOR GENDER & REFUGEE STUDIES
c/o Gibbs Houston Pauw PLLC
1000 2nd Avenue, Suite 1600
Seattle, WA 98104
(206) 682-1080

Stephen M. Medlock
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500

Matthew E. Fenn
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600

Matthew H. Marmolejo
MAYER BROWN LLP
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071
(213) 229-9500

Sarah M. Rich
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 22-55988, 22-56036

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[X] Prepared in a format, typeface, and type style that complies with Fed. R. App.

P. 32(a)(4)-(6) and contains the following number of words: 4,192.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[ ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** */s/ Stephen M. Medlock*          **Date** 2/28/25
*(use "s/[typed name]" to sign electronically-filed documents)*

26